[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM RE: MOTION #142.01 MOTION FOR SUMMARY JUDGMENT
By way of a Revised Complaint the plaintiffs allege that on June 30. 1996, at approximately 3:45 p.m., the plaintiff Netta Williams and the plaintiff's decedent, Daniel P. Williams, were passengers in a motor vehicle operated by John E. Keogh traveling northbound on Main Street in Cheshire, Connecticut. At said date and time the subject vehicle was passing a large maple tree located approximately 6 1/2 (six and one half) feet from the northbound lane. While passing under the aforementioned maple tree, a large limb fell and landed on top of the subject vehicle causing the injuries alleged by the plaintiff, and injuries resulting in the death of the plaintiff's decedent Daniel P. Williamson.
The plaintiffs' assert that the negligence and carelessness of the defendant, Cheshire Academy, its agents, servants or employees, (among other defendants) caused plaintiff's injuries as well as injuries and losses to the plaintiff's decedent.
On June 7, 2001, the defendant, Cheshire Academy filed a Motion for Summary Judgment. On October 17, 2001, the plaintiffs filed an objection to the defendant's motion. Before addressing the merits of defendants' motion, a brief review of the standards for the granting of a Motion for Summary Judgment is necessary:
 "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Orkney v. Hanover Ins. Co., 248 Conn. 195, 201, 727 A.2d 700
(1999).
 QSP, Inc. v. The Aetna Casualty Surety Co., 256 Conn. 343, 351 (2001).
 A "material fact" is a fact that will make a difference in the result of the case. See Hammer v. CT Page 14568 Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See Plouffe v. New York, N.H. H.R Co., 160 Conn. 482, 489, 280 A.2d 359
(1971). The party seeking summary judgment "has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980).
 Norse Systems, Inc. v. Tingley Systems, Inc., 49 Conn. App. 582, 590
(1998).
Section 17-45 of the Connecticut Practice Book concerns the proceedings for motions for summary judgment. It provides that:
 A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority otherwise directs. The adverse party [prior to the day the case is set down for short calendar] shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings.
The instant action sounds in negligence and in nuisance. The Courts of this state have directly addressed the issue of summary judgment motions in negligence cases.
 It is . . . well established that "[s]ummary judgment procedure is especially ill-adapted to negligence cases, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation." (Internal quotation marks omitted.) Michaud v. Gurney, 168 Conn. 431, 434, 362 A.2d 857
(1975); see also Fogarty v. Rashaw, 193 Conn. 442, CT Page 14569 446, 476 A.2d 582 (1984); DiUlio v. Goulet, 2 Conn. App. 701, 703, 483 A.2d 1099 (1984). A determination of negligence is necessarily one of fact. Michaud v. Gurney, supra, 434; Cappiello v. Haselman, 154 Conn. 490, 495, 227 A.2d 79 (1967); Balboni v. Stonick, 2 Conn. App. 523, 527, 481 A.2d 82
(1984). As such, "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." Spencer v. Good Earth Restaurant Corp., 164 Conn. 194, 199, 319 A.2d 403 (1972); see also Amendola v. Geremia, 21 Conn. App. 35, 37, 571 A.2d 131, cert. denied, 215 Conn. 803, 574 A.2d 217 (1990).
 Maffucci v. Royal Pk. Ltd. Partner, 42 Conn. App. 563, 568 (1996). Paragraph 2 of the plaintiffs' revised complaint provides that the tree that is the subject of this litigation was located "6 1/2 feet from the northbound lane on Main Street" in Cheshire, Connecticut. This section of highway is also known as Route 10 and is a state highway. The defendant, Cheshire Academy asserts that it is entitled to Summary Judgment for reason that it had neither control over nor a duty to maintain the subject tree and tree limb.
Section 23-65 of the Connecticut General Statutes concerns in pertinent part the "removing, pruning, injuring or defacing [of] certain trees or shrubs." This statute provides in pertinent part that:
 (b) Any person, firm or corporation, other than a tree warden or deputy tree warden, who removes, prunes, injures or defaces any shrub or ornamental or shade tree, within the limits of a public way or grounds, without the legal right or written permission of the town tree warden, the borough tree warden, the city forester, the Commissioner of Transportation, the Department of Public Utility Control or other authority having jurisdiction, shall be fined not more than the appraised value of the shrub or tree and shall be liable civilly for damages in any action brought by the property owner or the authority having jurisdiction affected thereby . . .
 (d) The removal, pruning or willful injury of any shrub or ornamental or shade tree . . . without the consent of the tree warden or of the officer with similar duties . . . by an agent or employee of such person, firm or corporation, shall be deemed to be the CT Page 14570 act of such person, firm or corporation, and such person, or any member of such firm or any officer of such corporation, as the case may be, shall be subject to the penalty herein provided, unless such act is shown to have been done without his knowledge or consent.
Section 23-59 of the Connecticut General Statutes concerns the powers and duties of tree wardens. It provides in pertinent part that:
 The town or borough tree warden shall have the care and control of all trees and shrubs in whole or in part within the limits of any public road or grounds and within the limits of his town or borough, except
those along state highways under the control of the Commissioner of Transportation . . . (emphasis added)
The plaintiffs have filed an objection to the defendant's Motion for Summary Judgment. The plaintiffs assert that there are genuine issues of fact "regarding the defendant's role in this incident". The plaintiffs further assert that "the cases and principles of law cited by the defendant are inapplicable" to the facts of this case.
The gist of the plaintiffs' objection is that the defendant, Cheshire Academy was involved in conversations with employees, agents, or servants of the state of Connecticut concerning the fate of the subject tree and that said conversation affected the state's decision making process as it related the possible removal of said tree. The conversations cited by the plaintiffs all took place in relation to a State of Connecticut road widening construction project at the subject cite.
Attached to the plaintiffs' objection are five exhibits.[1]
A. An excerpt of the deposition of Lynn C. Dayton; and
B. An excerpt of the deposition of Daniel Foley; and
C. An excerpt of the deposition of Ashan Saghir; and
According the plaintiffs, for the time period pertinent hereto, Lynn Dayton was the co-owner of the co-defendant Dayton Construction and he was the foreman of the construction project at the subject location. Mr. Dayton says in his deposition that:
 "The DOT [Department of Transportation] asked Cheshire if they wanted to leave the tree or take the tree down CT Page 14571 and put a smaller tree up. Cheshire wanted to leave the tree and go around it. We tried to go around it and not hurt the tree."
Plaintiffs' Exhibit "A" at page 23.
According to the plaintiffs, for the time period pertinent hereto, Dan Foley was a Project Engineer for the state of Connecticut. He oversaw the subject construction project. Mr. Foley says in his deposition that:
 . . . "The headmaster told us that the tree had historic value and that it was planted approximately the same time that that historic home was built and that they would not appreciate it if we cut it down."
Plaintiffs' Exhibit "B" at page 14 and 15.
According to the plaintiffs, for the time period pertinent hereto, Ashan Saghir, was a Project Engineer for the state of Connecticut. He was in charge of on-site supervision of the construction project. He says in his deposition that:
 "I was saying that if we take this tree down, the sidewalk will be in one straight line, otherwise we have to go around it, and the Cheshire Academy people said, `Okay. Go around it.'"
Plaintiffs; Exhibit "C" at pages 52 and 53.
The plaintiffs assert that the defendant's involving itself in conversations with the state concerning the fate of the tree created a duty to them. The defendant on the other hand asserts that under the particular facts of this case, it owed no duty to the plaintiff or the plaintiff's decedent.
 "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." Dean v. Hershowitz, 119 Conn. 398, 407-408, 177 A. 262 (1935). It is well settled that to state a cause of action for negligence, a plaintiff must establish "duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "The existence of a duty is a question of law, and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that CT Page 14572 duty in the particular situation. Petriello v. Kalman, 215 Conn. 377, 382-83, 576 A.2d 474 (1990)." Leavenworth v. Mathes, 38 Conn. App. 476, 479, 661 A.2d 632 (1995).
 Davies v. General Tours, Inc., 63 Conn. App. 17, 22 (2001).
The section of the road that is in question in this action is a part of the state's highway system. The tree that is the subject of this litigation is with the state highway known as Main Street, Cheshire, Connecticut (Route 10). The plaintiffs have not provided any affidavits or other documentation under the provisions of § 17-45 of the Connecticut Practice Book, asserting that the tree was not within the limits of the public highway.
Sections 23-59 and 23-65 of the Connecticut General Statutes places the jurisdiction over the tree in question under the exclusive jurisdiction of the Commissioner of Transportation:
 Our Supreme Court long ago rejected the argument that a defendant property owner can maintain a public nuisance by reason of tree branches overhanging a public right of way. Sec Muratori v. Stiles Reynolds Brick Co., 128 Conn. 674, 25 A.2d 58 (1942). In Muratori, the tree was positioned inside a fenced area of the defendant's property. Yet, as the tree grew, its limbs, branches and foliage extended over the zone of public travel. Reading General Statutes (1949 Rev.) §§ 2197 and 876c [now §§ 23-59 and 23-65] together, the Court held that "the legislative intent was to vest exclusive control in the tree warden of all trees standing within the limits of a highway or of any parts of trees extending within those limits, though the trees themselves stand on private grounds, except that other public authorities have jurisdiction." Id., 678.
 Mode v. Nelson, Superior Court, Judicial District of New Britain, D.N. CV-99-0493091 (Feb. 18, 2000, Graham, J.).
The fact that the defendant expressed its desire to the state that the subject tree not be preserved does not take the matter out of the exclusive jurisdiction granted to the state by statute. The statute does not provide a mechanism for Commissioner of Transportation to delegate his statutory authority or a portion of his authority to private individuals. Therefore to hold thusly would be to defy the legislative CT Page 14573 intent to invest exclusive control of trees within state public highways in the Commissioner of Transportation.
 "A cardinal rule of statutory construction is that where the words of a statute [or rule] are plain and unambiguous the intent of the [drafters] in enacting the statute [or rule] is to be derived from the words used. . . . Where the court is provided with a clearly written rule, it need look no further for interpretive guidance." (Internal quotation marks omitted.) Ficara v. O'Connor, supra, 45 Conn. App. 629.
 Schiappa v. Ferrero, 61 Conn. App. 876, 882 (2001).
Although the summary judgment procedure is "especially ill-adapted to negligence cases", Maffucci, Supra, that is not the case in this particular action. In the case at bar there are no genuine issues of material fact concerning whether the defendant had a duty to the plaintiffs to maintain the subject tree. By statute, its maintenance and control was under the exclusive jurisdiction of the Commissioner of Transportation. The defendant's Motion for Summary Judgment is granted.
Richard A. Robinson, J October 24, 2001